IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DALER MUHITDINOV, ) <br> ) <br> Defendant. ) <br> ) | 8:11CR397 <br><br> **MEMORANDUM AND ORDER** |

This matter is before the court after a bench trial on March 13, 2012, on charges that the defendant violated 18 U.S.C. § 924 on four occasions by knowingly making false statements with respect to information required to purchase firearms. The court asked for additional briefing on the issue of whether materiality is an element of the crime. Under the Federal Rules, on a party's request before a finding of guilty or not guilty, the court must state specific findings of fact in open court or in a written decision or opinion. Fed. R. Crim. P. 23(c). These findings supplement those made on the record at trial.

**I. BACKGROUND**

The Superseding Indictment in this case charged that, on four occasions, the defendant knowingly made false statements to a licensed firearms dealer with respect to information required to be kept in the records of such business. Filing No. 23, Superseding Indictment. Specifically, the Superseding Indictment charged that on each of those occasions the defendant "did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record to the effect that he was a citizen of the United States whereas, in truth and in fact he was a citizen of Tajikistan at the time of the purchase." *Id.*

The evidence at trial showed the defendant also made false statements with respect to his current residence. Further, the evidence at trial showed that, at the time of the incidents, as a legal permanent resident, the defendant was not precluded from legally being approved for and receiving the guns.

In moving to dismiss and for a judgment of acquittal at the close of the evidence, the defendant argued that this is not the sort of case that was intended to fall under 18 U.S.C. § 924(a)(1)(A) because the representation at issue was not determinative of whether the defendant could obtain a weapon, in other words, the falsehood had no effect on the defendant's ability to legally obtain the firearms. Further, the defendant argued that he cannot be convicted of false statements in connection with a false address because those allegedly false statements were not charged in the Superseding Indictment. The court requested further briefing on the issue of materiality.

II.  FINDINGS OF FACT

The defendant testified he was born on May 13, 1981 in Dushambe, Tajikistan. He first came to the United States in May of 2001. He was a student at University of Nebraska at Omaha and had a student visa that was good for his time in school—one year. After a couple of years, he lost his student visa because he could not afford tuition. He nonetheless stayed in the United States.

He testified that he was a hunter and he hunted deer, bear, fox, wolves, and mountain goats. He stated he did not apply for a firearm while he was a student. He also testified he thought he needed to be a citizen of the United States to get a firearm.

On November 26, 2007, he married Mary Curtis. The defendant and his wife lived in Benson Gardens in Omaha and they had no children. The defendant also testified that he hired Joseph Lopez Wilson, an attorney, because he wanted to get a green card and

citizenship. He stated he was told he needed to marry a citizen, or have a business and residence. He obtained a green card in September 2008 that was valid for two years. He understood he had to reapply before the card expired. He stated he worked at a shop buying and selling cars.

He testified that he did not attempt to buy a firearm when he had a green card because he thought he had to be a citizen to obtain a firearm. He testified he only used his legal name. He testified that he thought he was a citizen because he was married, had a green card and was working. He testified that every time he filled out an application for a firearm, he believed he was a Untied States citizen. He stated he first learned he was not a citizen when he was arrested.

He testified that he believed he could renew his green card after his divorce because he had three children who were citizens, he had a legal job, he had Social Security, was paying taxes and owned a house and two businesses—-a janitorial business and a car lot. He further testified that he was never denied a firearm. He purchased hunting firearms and kept them in his house in a gun safe. He also testified he did not sell firearms. He had obtained firearms in the past and testified he filled out the forms in the same way each time and used his driver's license and sometimes his green card as identification.

On November 3, 2011, he attempted to purchase firearms, first at Dick's Sporting Goods and later at Cabela's. He testified he had a $40.00 gift card for Dick's and wanted a coyote hunting gun. He stated he filled out the forms at each store. He stated he did not put his Social Security number on the form. The license was denied at Dick's. He asked a sales person to tell him the reason, but was not given any reason, just a number to call. He testified the salesperson told him it could be a mistake or could be "the system." He

called the number and reached the automatic voice mail. He stated that he thought the denial was a system mistake. He then proceeded to Cabela's to try to purchase a gun, this time with the Social Security number in the application.

On each application he listed his address as the Benson Gardens Boulevard address he had previously shared with his wife because the salesperson told him to put the address that matched his driver's license on the form.

He admitted lying to law enforcement officers about the presence of his girlfriend (the mother of his children) because she is an illegal immigrant and he wanted to protect her. Further, he stated he had used a different name in the past, Isfandiyor Yuhoussov. He stated that the name was given to him at birth and that he has two birth certificates. He became aware of the two birth certificates when he was eighteen years old. He testified that his mother told him she had had rough times with his father. He first used the second name to leave the country in 2001 after he witnessed a murder. He stated he was never called to court. He used the name, he went back home, they were looking for him, so he left again in 2003. He testified that since his marriage he has never used the second name. On cross-examination, however, he stated he was charged with reckless driving under the second name on September 14, 2007.

He showed his green card in connection with the November 3, 2011, application. He testified he never lied about his citizenship to get a gun. He also testified he did not know he could get a gun if he was not a citizen until this case. On cross-examination, he testified that he thought the green card was part of the process of being a United States citizen and that if you get the card, you are a citizen as long as you follow the process. He testified he can read English, but that he did not read the box above his signature on the form. He also stated he still received mail at the Benson Gardens Address.

Immigration and Customs Enforcement ("ICE") agent Gregory Hammer also testified at the trial. He stated that conditional legal residents, i.e., those who carry a green card, are permitted to purchase and possess weapons. Witnesses for both the government and the defendant testified that the defendant was a legal permanent resident and not a United States citizen at the time he attempted to purchase weapons.

At the conclusion of the trial, the court found that the defendant knew he was not a United States citizen and knowingly represented that he was a United States citizen on the form.

### III. DISCUSSION

**A. Law**

The statute provides:

Except as otherwise provided in this subsection, subsection (b), (c), (f), or (p) of this section, or in section 929, whoever--

    (A)    knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;

    (B)    knowingly violates subsection (a)(4), (f), (k), or (q) of section 922;

    (C)    knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(l); or

    (D)    willfully violates any other provision of this chapter,

shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 924.

To obtain a conviction under § 924(a)(1)(A), the government has to prove, beyond a reasonable doubt, the following three elements: (1) the dealers named in the indictment were federally licensed firearms dealers at the time the offenses occurred; (2) the defendant made a false statement or representation in the records that the licensed firearm dealer was required by federal law to maintain; and (3) the defendant made the false statement with knowledge of the falsity. *United States v. Prince*, 647 F.3d 1257, 1265-66 (10th Cir. 2011); *see United States v. Abfalter*, 340 F.3d 646, 655 (8th Cir. 2003) ("To establish a violation of § 924(a)(1)(A), the government must prove that a defendant knowingly made a false statement with respect to information that the law requires a federally licensed firearms dealer to keep."); *United States v. Howell*, 37 F.3d 1197, 1202 (7th Cir. 1994) (same).

"The term 'knowingly' [in 18 U.S.C. §§ 922 and 924] merely requires proof of knowledge of the facts that constitute the offense," and the term "willfully" requires a defendant to have "acted with knowledge that his conduct was unlawful." *Dixon v. United States*, 548 U.S. 1, 5-6 (2006) (holding that the "the Government bore the burden of proving beyond a reasonable doubt that [the defendant] knew she was making false statements in connection with the acquisition of firearms and that she knew she was breaking the law when she acquired a firearm while under Indictment."). The term "'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law." *Bryan v. United States*, 524 U.S. 184, 193 (1998) (stating that "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.").

6

The Gun Control Act of 1968 ("GCA"), makes it unlawful for certain individuals, including convicted felons, fugitives from justice, and illegal aliens, to possess firearms. 18 U.S.C. §§ 921-930.  In 1993, Congress amended Title I of the GCA with the enactment of the Brady Handgun Violence Prevention Act ("the Brady Act") which put into place interim provisions for a national background check system, and required that the United States Attorney General establish a permanent national instant background check system. 18 U.S.C.A. § 922(t)(1).  Pursuant to the Brady Act, the Attorney General established that system, known as the NICS, to search the backgrounds of prospective gun purchasers for criminal or other information that would disqualify them from possessing firearms.  *See* Pub. L. No. 103-159, 107 Stat. 1536.

"[T]he statute makes clear that the federal firearms licensee must keep records of sales of firearms on forms that the Attorney General prescribes." *United States v. Soto,* 539 f.3d 191, 199 (3d Cir. 2008); *see* 18 U.S.C. § 923(g)(1)(A).  "Among the regulations prescribed by the Attorney General is the requirement that the licensee have each firearm applicant fill out form 4473."  *Id.,* 27 C.F.R. § 478.124(a)-(b).  Licensed firearms dealers are required, under several provisions of the Gun Control Act, to keep records containing information about the identity of individuals who buy firearms. *United States v. Nelson*, 221 F.3d 1206, 1209 (11th Cir. 2000); *see* 18 U.S.C. § 923(g) (setting forth the general requirement that "[e]ach . . . licensed dealer shall maintain . . . records of . . . sale[ ] or other disposition of firearms at his place of business"); § 922(b)(5) making it clear that the records must contain, at a minimum, "the name, age, and place of residence" of any individual who purchases a firearm from a licensed dealer); and § 922(s)(3) (providing that prior to selling a handgun to an individual "transferee," a licensed dealer must obtain a

statement from that transferee which contains "the name, address, and date of birth appearing on a valid identification document . . . of the transferee and a description of the identification used"). Firearms dealers must also verify the transferee's identity by examining the identification document described in the transferee's statement. *Nelson, 221 F.3d at 1209*. This information about the actual buyer's identity is necessary in order for the firearms dealer to ascertain whether that potential purchaser is in fact eligible to purchase a firearm.[1]  *Id.* at 1209-10 (noting that if an eligible buyer could simply use a "straw man," the statutory scheme would be defeated).

In the case of a transferee who is an alien legally in the United States, the licensed dealer is to "cause the transferee to present documentation establishing that the transferee is a resident of the State in which the dealer's business is located," such as "utility bills or a lease agreement which show that the transferee has rsided in the State continuously for at least 90 days prior to the transfer of the firearm." 27 C.F.R. § 478.124(c)(3)(ii). Further, in the case of a nonimmigrant alien transferee asserting an exception to, or a waiver from, the nonimmigrant alien prohibition, the dealer must request and attach applicable documentation establishing the exception or waiver. 27 C.F.R. § 478.124(c)(3)(iii).

Because "we live in an era in which the incidence of violent crime is high and terrorism is a persistent threat," a "false statement in a firearms application raises a

---

[1] Before making an over-the-counter transfer of a firearm, federal regulations require a dealer to obtain a Form 4473 from the transferee showing the transferee's name, sex, residence address (including county or similar political subdivision), date and place of birth; height, weight and race of the transferee; the transferee's country of citizenship; the transferee's INS-issued alien number or admission number; the transferee's state of residence; and certification by the transferee that the transferee is not prohibited by the Act from transporting or shipping a firearm in interstate or foreign commerce or receiving a firearm which has been shipped or transported in interstate or foreign commerce or possessing a firearm in or affecting commerce. 27 C.F.R. § 478.124 (b) and (c)(1). Other information, such as a Social Security number, is optional. 27 C.F.R. § 478.124 (d).

modicum of concern, and the level of concern escalates almost exponentially as the number of weapons and the number of false statements grow." *United States v. Lewis, 517 F.3d 20, 29 (1st Cir. 2008)* (involving a challenge to a false-statement-on-firearms-applications conviction based on alleged selective prosecution).

### B. Analysis

The court finds that materiality is not an element of proof of the crime for which the defendant was charged. The statute prohibiting false statements on firearms applications is part of a comprehensive federal statutory scheme aimed at preventing gun violence. Although the court can envision a case where an innocent misrepresentation or omission of fact would be so immaterial or inconsequential as not to support a conviction, a misrepresentation with respect to citizenship is not such a fact. The statute prohibits knowingly making a false statement with respect to the information that gun dealers are required to collect and keep.

The court discredits the defendant's testimony that he believed he was a citizen. The defendant is an intelligent, sophisticated business owner who has been in the United States for many years and who solicited the assistance of counsel in connection with citizenship. The evidence shows that the defendant thought that citizenship was a prerequisite to obtaining a gun. The court finds the defendant knew he was not a citizen and stated to the contrary on the form. Accordingly, the court finds the government has proved, beyond a reasonable doubt, the elements of the crime charged in each count of the Superseding Indictment and the court finds the defendant guilty on Counts I through IV of the Superseding Indictment.

In light of this disposition, the court need not address the defendant's contention that a finding that he knowingly made a false statement in connection with his address would not be sufficient to support a conviction since it was not charged in the Superseding Indictment and would constitute fatal variance.

IT IS ORDERED:

1. The defendant's oral motion for acquittal is denied.

2. On Count I of the Superseding Indictment, the court finds the defendant guilty.

3. On Count II of the Superseding Indictment, the court finds the defendant guilty.

4. On Count III of the Superseding Indictment, the court finds the defendant guilty.

5. On Count IV of the Superseding Indictment, the court finds the defendant guilty.

6. The Probation Office is directed to prepare a presentence investigation report.

7. A sentencing order will issue this date.

DATED this 31st day of July, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
U.S. District Court Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.